UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x
                         :
MBODY MINIMALLY INVASIVE     :
SURGERY, P.C. et al.,            :
                         :     13-cv-6551 (TPG)
              Plaintiff,   :
                         :
        – against –      :
                         :
EMPIRE HEALTHCHOICE HMO, INC. et :
al.,                          :
                         :
           Defendants.  :
---------------------------------------------x

## OPINION

This case arises out of a dispute between health insurance companies and medical professionals who treated patients enrolled in health plans offered by those companies.  Plaintiffs allege that defendants underpaid and denied bills for medically-necessary services provided to patients covered by defendants' health insurance plans.

Some of the insurance plans at issue are subject to the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA").  Other plans identified in the complaint are not subject to ERISA ("non-ERISA plans") and are regulated by state law.  The complaint asserts the following causes of action: wrongful denial of benefits under ERISA; violation of ERISA, 29 C.F.R. § 2560.503–1(g); breach of fiduciary duty under ERISA; breach of ERISA § 502(a)(3); breach of contract, breach of the implied covenant of good faith and fair dealing; unjust enrichment; deceptive act or practice in violation of New York

1

General Business Law § 349; and failure to make timely payments in violation of New York Insurance Law § 3224-a.

On November 26, 2013, Defendants Empire Healthchoice HMO, Inc.; Empire Healthchoice Assurance Inc.; Community Insurance Company; and Anthem Health Plans of Virginia, Inc. (collectively, the "Empire defendants") filed a joint motion to miss.  Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS") also filed a motion to dismiss on the same date.  Defendants move to dismiss the complaint on multiple grounds, including, *inter alia*, plaintiffs lack standing to prosecute this action under ERISA, plaintiffs fail to state a cognizable claim under ERISA, and plaintiffs' state-law claims fail to state a claim upon which relief can be granted.

For the following reasons, the court grants BCBS's motion to dismiss in its entirety.  The court grants in part and denies in part the motion filed by the Empire defendants.

## The Complaint

Plaintiff Mbody Minimally Invasive Surgery, P.C. ("MMIS") is a medical practice that provides medical and surgical services.  Plaintiff Nick Gabriel, D.O., is a bariatric surgeon and managing partner of MMIS, and plaintiffs Jordi Brewer, P.A., and Erin Nastro, P.A. are physician assistants who are employed at MMIS (collectively "the provider plaintiffs").  Bariatric surgery is also known as "weight-loss surgery."  Bariatric surgeons help obese individuals lose weight by limiting the amount an individual can eat, through procedures like gastric bypass surgery, or the way in which nutrients are processed. See *Gastric bypass*

*surgery*, THE MAYO CLINIC, http://www.mayoclinic.org/tests-procedures/bariatric-surgery/basics/definition/prc-20019138 (last visited Jul. 8, 2014).

Defendants are healthcare companies that sell various health insurance policies. Under these insurance plans, there are two types of healthcare providers: 1) "participating" providers, who contract with defendants to receive contractually established compensation for medical services, and 2) "out-of-network" providers, who do not have negotiated-payment rates and do not have contracts with defendants. For example, a participating physician could enter into a contract with defendants that entitles the physician to receive $120 for any patient, insured by one of defendants' plans, who visits the doctor for a physical examination. The provider plaintiffs in this case are considered "out-of-network" providers under the health plans offered by defendants.

Plaintiffs allege that they provided medical care to patients enrolled in defendants' health plans. After treating the patients, plaintiffs billed defendants for the cost of the services provided. Plaintiffs allegedly based their billing rates on the amount of compensation health insurance companies have historically paid for those services. In some cases, defendants remitted payment directly to plaintiffs. However, plaintiffs allege that defendants consistently and arbitrarily denied claims or under-reimbursed claims submitted by plaintiffs. For example, plaintiffs allege that Dr. Gabriel and Ms. Nastro performed a medical procedure on February 11, 2013, for which defendants paid Dr. Gabriel $2,417.32 and paid his assistant, Ms. Nastro, $15,000. Plaintiffs further allege that defendants

3

offered no explanation for this discrepancy in payment. Attached to the complaint are four exhibits, which list the medical procedures for which plaintiffs seek payment, the date on which the procedures were performed, the relevant Current Procedural Terminology ("CPT") codes, the amount billed, and the amount paid.

Plaintiffs allege they are the assignees of the rights and benefits of patients who are covered under defendants' health insurance plans. Plaintiffs allege that "at all relevant times," patients signed assignment of benefit forms, assigning "all of their health benefits and the right to appeal and to pursue adverse determinations of these benefits" to plaintiffs. (Compl. ¶ 23). However, as discussed further below, some of the relevant health insurance plans contain anti-assignment provisions. For example, one plan offered by Empire BlueCross BlueShield states that "any attempt to assign benefits or payments for benefits will be void unless authorized by us in writing. . ." (Declaration of Rachel Kramer, Nov. 26, 2013 ("Kramer Decl."), Ex. M). Plaintiffs do not allege that they received authorization to serve as assignees from any of the defendants.

## Discussion

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To establish a facially plausible case, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. In deciding a motion to dismiss, the

4

court accepts as true all well-pleaded allegations contained in the complaint and draws all reasonable inferences in favor of the plaintiff.  See Twombly, 550 U.S. at 555-56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

## A. Standing

Defendants argue that plaintiffs do not have standing to bring claims related to the insurance plans governed by ERISA.  Standing to sue under ERISA § 502(a) is limited to "participants or beneficiaries" of ERISA plans.  See 29 U.S.C. § 1132(a); Simon v. Gen. Elec. Co., 263 F.3d 176, 177 (2d Cir. 2001).  Plaintiffs concede that they are neither participants nor beneficiaries under the health plans.  Instead, plaintiffs claim standing as assignees of the patients they treated.

It is well-established in this Circuit that "the assignees of beneficiaries to an ERISA-governed insurance plan have standing to sue under ERISA."  I.V. Servs. of Am., Inc. v. Trs of Am. Consulting Eng'rs Council Ins. Trust Fund, 136 F.3d 114, 117 n.2 (2d Cir. 1998); see also Biomed Pharm., Inc. v. Oxford Health Plans (NY), Inc., No. 10-cv-7427, 2011 WL 803097 (S.D.N.Y. Feb. 18, 2011).  Therefore, in order for plaintiffs to bring a claim related to a particular health insurance plan, plaintiffs must have obtained a valid assignment under that plan.

Plaintiffs allege that they have obtained valid assignments for all of the claims stated in the complaint.  The complaint alleges that "at all relevant times,"

patients signed assignment of benefit forms.  (Compl. ¶ 24).  However, plaintiffs do not have standing to bring claims under ERISA plans that contain express anti-assignment provisions.   If a health insurance plan "unambiguously prohibits assignment, an attempted assignment will be ineffectual."  Neuroaxis Neurosurgical Assocs, PC v. Costco Wholesale Co., 919 F. Supp. 2d 345, 351-52 (S.D.N.Y. 2013).  Here, the anti-assignment provisions are clear.  For example, the aforementioned Empire plan states that "any attempt to assign benefits or payments for benefits will be void." (Kramer Decl., Ex. M).  The plan language is unambiguous.  Thus, plaintiffs' alleged assignments are not valid.

Plaintiffs argue that defendants waived the anti-assignment provisions by providing direct payment to plaintiffs or, alternatively, that defendants are estopped from raising this defense because it was not raised as a reason for denying or reducing payment.  Neither of these arguments has merit.  Health insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions.  See e.g. Neuroaxis, 919 F. Supp. 2d at 355-56.  Moreover, estoppel can only be applied in the ERISA context in "extraordinary circumstances."   See id; see also Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 109 (2d Cir. 2008). Here, plaintiffs do not allege any extraordinary circumstances.

That defendants did not raise the anti-assignment provision at the time they denied or reduced payment is irrelevant because the anti-assignment provision was not a factor determining the payment amount.   Plaintiffs' argument is simply another way of re-arguing that defendants waived the anti-

assignment provision by making direct payments to plaintiffs—an argument courts have repeatedly rejected.  See e.g. Riverview Health Institute LLC v. Med. Mutual of Ohio, 601 F.3d 505, 523 (6th Cir. 2010) (holding that payment to a healthcare provider does not create a "viable estoppel claim" when the health insurance plan clearly prohibits assignment); Neuroaxis, 919 F. Supp. 2d at 355-56.

Accordingly, all claims related to health insurance plans that contain anti-assignment provisions are dismissed.  For a list of these claims, see the Kramer Declaration, paragraph 4.

**B. Count I: ERISA § 502(a)(1)(B) Wrongful Denial of Benefits**

In their first claim for relief, plaintiffs allege that defendants wrongfully denied benefits covered by the insurance plans, in violation of ERISA § 502(a)(1)(B).  To state a claim under ERISA § 502(a)(1)(B), a plaintiff must allege that "(1) the plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied [benefits] owed under the plan."  Giordano v. Thomson, 564 F.3d 163, 168 (2d Cir. 2009).

The complaint sufficiently pleads a claim for wrongful denial of benefits under ERISA.  The first prong is not in dispute.  Plaintiffs satisfy the second prong because they are suing as assignees of beneficiaries. With regard to the third prong, plaintiffs provide specific and detailed examples of bills for which defendants allegedly arbitrarily and capriciously reduced payments.   The complaint also lists each of the medical procedures for which plaintiffs bring claims, the date, the relevant CPT code, the billing rate, and the amount

defendants paid.  Taken together, these statements allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Defendants argue that the complaint should be dismissed because only the "plan" or "plan administrator" may be sued under ERISA § 502(a)(1)(B) and that plaintiffs fail to allege that defendants fit into either category.  Although plaintiffs do not specifically allege that defendants are plan administrators in the section of the complaint describing their claim under § 502(a)(1)(B), they do allege that plaintiffs are the plan administrators in other sections of the complaint.  (See e.g. Compl. ¶ 56.)  The court construes the complaint in the light most favorable to the plaintiffs and finds that plaintiffs sufficiently allege a claim under § 502(a)(1)(B).   Therefore, the court denies defendants' motion to dismiss plaintiffs' claims under Count I.

## C. Count II: ERISA § 503(1) Adequate Written Notice

Plaintiffs also bring claims under ERISA § 503(1) and 29 C.F.R. § 2560.503-1, alleging that defendants did not provide adequate written notice of their reasons for denying or reducing plaintiffs' claims for payment.  Defendants contend that these claims should be dismissed because neither the statute nor the regulations creates a private right of action.

Although defendants are correct, courts have recognized a plaintiff's right to sue under § 502(a)(3) to enforce the rights guaranteed under § 503.  See Nahoun v. Employees' Pension Plan of Credit Suisse First Boston, No. 04-cv-9221, 2005 WL 1476453, *2 n.11 (S.D.N.Y. June 22, 2005).  Plaintiffs allege that they received no explanation of payment in many cases and meager explanations

8

in others.  These allegations state a claim that plaintiffs did not receive sufficient explanations for defendants' payment decisions.   Accordingly, defendants' motion to dismiss Count II of the complaint is denied.

## D. Count III: § 502(a)(3) Fiduciary Duties

Plaintiffs also bring a claim for breach of fiduciary duty under ERISA § 1132(a)(3).  It is well established that a plaintiff may only plead a § 1143(a)(1)(B) claim to enforce the terms of an ERISA plan *and a § 1132(a)(3) claim* for breach of fiduciary duty if Congress has not provided adequate relief for the plaintiff's injury.  See Varity Corp. v. Howe, 516 U.S. 489, 515 (1996).  In other words, both claims may proceed only if plaintiffs seek "appropriate equitable relief."  See Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001).

In Nechis v. Oxford Health Plans, Inc., the court held that a participant who had an effective remedy at law to recover the monetary value of the denied benefits was not entitled to equitable relief under ERISA.  421 F.3d 96, 103 (2d Cir. 2005).  Similarly here, plaintiffs' fiduciary duty claim is duplicative of their claim for monetary damages.   At base, plaintiffs seek damages for alleged underpayment or denial of payment.  Cf. Biomed Pharm, 775 F. Supp. 2d at 737. (finding that claims for injunctive relief were duplicative of claims for monetary relief because the "gravamen of all three Counts is that Oxford improperly denied the Patient benefits to which he was entitled under the Plan").   Consequently, the court dismisses plaintiffs' fiduciary duty claims.

9

### E. Count IV: ERISA § 502(a)(3) Declaratory Judgment

Plaintiffs also seek declaratory relief, alleging that defendants did not provide a "full and fair review" of all claims or comply with requests for plan materials, in violation of ERISA § 502(a)(3).  In this case, the court concludes that these are legal rather than equitable claims.  See Id. ("More fundamentally, the Court concludes that these . . . claims are legal rather than equitable in nature as they may be adequately redressed by money damages.")  Also, the court finds that plaintiffs' declaratory judgment claim is duplicative of its claim for benefits under ERISA § 502(a)(1)(B).  Defendants' motion to dismiss the declaratory judgment claims is granted.

The only plan under which plaintiffs sue BCBS contains an anti-assignment provision, and thus all ERISA claims against BCBS are dismissed.  Given that the state-law claims are not asserted against BCBS, the complaint against BCBS is dismissed in its entirety.

### F. State-Law Claims

Plaintiffs also bring claims under New York State law for plans that are not governed by ERISA ("non-ERISA") claims.  These claims are related to plans under the Suffolk County government employees' health plan ("Suffolk plans"), the Federal Employees Health Benefit Program ("FEHB"), and Medicare.  In order to promote judicial efficiency, the court will exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

**a. Federal Employee Health Benefit Act Claims**

Plaintiffs bring state-law claims under plans governed by the Federal FEHB, 5 U.S.C. § 8902 et seq.  Defendants move to dismiss plaintiffs' claims under FEHB-plans for three reasons: (1) plaintiffs failed to sue the proper defendant, the Office of Personnel Management ("OPM"), (2) FEHB preempts all of plaintiffs' state-law claims related to FEHB plans, and (3) plaintiffs failed to exhaust their administrative remedies.

The Supreme Court has made clear that "OPM's regulation, 5 CFR § 890.107(c), instructs enrollees seeking to challenge benefit denials to proceed in federal court against OPM and not against the carrier or carrier's subcontractors." Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 680 (2006).  This defect alone is sufficient for the court to dismiss plaintiffs' claims related to insurance plans governed by FEHB.  As a result, the court need not consider defendants' additional bases for dismissing these claims.

**b. Medicare**

Plaintiffs also bring claims related to Medicare plans, which are governed by the Social Security Act.  Under 42 U.S.C. § 405(g), plaintiffs cannot bring suit in federal court unless they have exhausted Medicare's multi-step appeals process.  This procedure is "the sole avenue" for judicial review of claims arising under the Social Security Act.  Heckler v. Ringer, 466 U.S. 602, 614-615 (1984).  Here, plaintiffs fail to allege that they exhausted any of the required administrative remedies.  Thus, the court dismisses all claims related to plans with the prefix "YLV," which is the prefix associated with Medicare plans.

11

### c. Breach-of-contract

Plaintiffs also bring a breach-of-contract claim as assignees of the insured patients.  Under New York law, there are four elements to a breach-of-contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).  It is well established that to adequately plead a breach-of-contract claim, a plaintiff must "identify what provisions of the contract were breached as a result of the acts at issue." See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011); see also Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001).  Here, plaintiffs fail to allege that defendants breached any specific contractual provisions.  Accordingly, the breach-of-contract claims are dismissed.

### d. Implied covenant of good faith and fair dealing

New York State law recognizes an implied covenant of good faith and fair dealing in every contract.  Cross & Cross Properties Ltd. v. Everett Allied Co., 886 F.2d 497, 501–02 (2d Cir. 1989).  "The covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." County of Orange v. Travelers Indem. Co., No. 13-cv-06790, 2014 WL 1998240 (S.D.N.Y. May 14, 2014).  However, a claim for breach of the covenant will be dismissed "as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying

12

contract." <u>Usov v. Lazar</u>, No. 13-cv-818, 2013 WL 3199652 (S.D.N.Y. June 25, 2013).

Defendant seeks to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because the claim is based on the same facts under which plaintiffs bring breach-of-contract claims.  However, plaintiffs fail to identify an express provision of the contract which defendants have breached and that claim is dismissed.  Therefore, their good-faith claim is not redundant.  Defendants' motion to dismiss the good-faith claim is denied.

### e.  Unjust enrichment/quasi contract

Plaintiffs also assert an unjust-enrichment or quasi-contract claim, alleging that defendants unfairly profited from the services plaintiffs provided to patients.  To state a claim for unjust enrichment, a plaintiff must allege that "(1) defendant was enriched (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit . . . defendant to retain what is sought to be recovered."  <u>In re Canon Cameras</u>, No. 05-cv-7233, 2006 WL 1751245 (S.D.N.Y. June 23, 2006).

Plaintiff's theory of unjust enrichment is as follows.  Defendants are able to charge patients higher health insurance premiums by offering out-of-network coverage for providers, such as plaintiffs.  If defendants pay out-of-network providers the same rates as in-network providers, defendants benefit from the additional premiums paid by patients without incurring the additional costs of paying for out-of-network benefits.

Plaintiffs' theory is too tenuous to state a claim for unjust enrichment. Plaintiff includes no facts to support its contention that defendants charged patients higher premiums because of the out-of-network coverage. Additionally, plaintiffs allegedly provided medical care to patients—not defendants. Thus, it is not clear that defendants benefited from the services provided by plaintiffs to patients. As a result, the court grants defendants' motion to dismiss the unjust-enrichment claims.

### f.  New York General Business Law § 349

Plaintiffs allege that defendants violated New York's Consumer Protection Act, N.Y. Gen. Bus. Law § 349, by charging patients higher premiums for out-of-network benefits and then refusing to pay out-of-network providers higher rates than in-network providers. To state a claim under § 349, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000).

This claim fails, in part, for the same reason plaintiffs' unjust-enrichment claim fails: plaintiffs allege no facts to show that defendants charged higher premiums based on out-of-network coverage. Additionally, physicians requesting payment from insurers are not "consumers" under the statute. Med. Soc'y of State of N.Y. v. Oxford Health Plans, Inc., 790 N.Y.S. 2d 79 (1st Dep't 2005). Plaintiffs' claim is, at base, that defendants misled providers—not consumers—by failing to compensate providers at the rates billed. Therefore, plaintiffs' claim under § 349 is dismissed for failure to state a claim.

14

### g. New York Insurance Law § 3224-a

Plaintiffs also claim that defendants failed to pay plaintiffs in a timely manner, in violation of New York Insurance Law § 3224-a. Section 3224-a "requires prompt payment of any claim submitted on a standard form so long as the obligation to pay the claim is reasonably clear." Beth Israel Med. Ctr. v. Goodman, No. 12-cv-1689, 2013 WL 1248622 (S.D.N.Y. Mar. 26, 2013). Plaintiffs allege that more than 45 days—the statutorily required payment period—has elapsed since plaintiffs submitted bills for payment. Construing the complaint most favorably to the plaintiff, the court interprets plaintiffs' allegations to state that the claims submitted were "reasonably clear." Accordingly, defendants' motion to dismiss the claims brought pursuant to § 3224-a is denied.

### Conclusion

The Empire defendants' motion to dismiss is granted in part and denied in part. BCBS's motion to dismiss is granted in its entirety.

This opinion resolves the motions located at Doc. Nos. 4 and 8.

Dated: New York, New York
     August 15, 2014

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/15/2014

15