UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                        :
MBODY MINIMALLY INVASIVE                :        13cv6551 (DLC)
SURGERY, P.C., et al.,                  :
                      Plaintiffs,       :        OPINION & ORDER
                                        :
             -v-                        :
                                        :
EMPIRE HEALTHCHOICE HMO, INC., et       :
al.,                                    :
                      Defendants.       :
----------------------------------------- X
APPEARANCES

<u>For plaintiffs:</u>

Anthony F. Maul
The Maul Firm, P.C.
68 Jay Street, Suite 201
Brooklyn, NY 11201

D. Brian Hufford
Jason S. Cowart
Zuckerman Spaeder LLP
399 Park Ave., 14th Floor
New York, NY 10022

<u>For defendants:</u>

Robert A. Scher
Rachel E. Kramer
Foley & Lardner LLP
90 Park Avenue
New York, NY 10016

DENISE COTE, District Judge:

    In this dispute, medical providers seek payment for

services rendered from several health insurance companies.  The

plaintiffs allege that the defendants underpaid and denied

claims (the "Claims") for medically-necessary services provided

to the plaintiffs' patients, who were enrolled in the defendants' health care plans.  The plaintiffs seek redress for these Claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") and state law.  The defendants have filed a motion to dismiss certain Claims from the case.  For the reasons stated below, the motion for partial dismissal is granted in part.

## BACKGROUND

The following facts are taken from the amended complaint. Plaintiff Mbody Minimally Invasive Surgery, P.C. ("MMIS") is a medical practice in Southampton, New York.  Plaintiff Nick Gabriel, D.O., the managing partner of MMIS, is a general and bariatric surgeon licensed in New York.[1]  The defendants are Blue Cross Blue Shield ("BCBS") entities in the business of underwriting and administering health insurance plans (the "Plans") that provide benefits to enrollees or members (the "Enrollees").[2]

The BCBS Plans offered by the defendants identify two types of providers: "participating" providers who contract with the

_____

[1] Two other plaintiffs named in the amended complaint, Jodie Brewer, P.A. and Erin Nastro, P.A., voluntarily dismissed their claims against the defendants on February 9, 2016.

[2] The defendants are Empire Healthchoice HMO, Inc., Empire Healthchoice Assurance Inc. d/b/a Empire Blue Cross Blue Shield, Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield of Ohio, and Anthem Health Plans of Virginia d/b/a Anthem Blue Cross and Blue Shield of Virginia.

defendants to receive negotiated compensation, and "out-of-network" providers who do not have contracted compensation rates with the defendants.  Both MMIS and Dr. Gabriel are out-of-network providers who provided medical services to Enrollees.

The amended complaint alleges that the defendants' payments to the plaintiffs have been drastically below their billed charges, as well as drastically below the rates charged by providers of comparable services in the relevant geographic area.  In order to seek reimbursement for these Claims, the plaintiffs allege that they are assignees of the rights and benefits of Enrollees covered by the Plans.

Some of the Plans contain anti-assignment clauses.  As an example, one Plan offered by Empire Healthchoice HMO, Inc. provides

> Assignment.  <u>You cannot assign</u> any benefits or monies due under this Contract to any person, corporation, or other organization.  <u>Any assignment by You will be void</u>.  Assignment means the transfer to another person or to an organization of Your right to the services provided under this Contract or your right to collect money from Us for those services.  However, You may request Us to make payment for services directly to Your Provider instead of You.

(Emphasis supplied.)  The amended complaint alleges that the defendants waived the anti-assignment clauses by engaging in certain conduct.  First, the defendants regularly made direct payments to the plaintiffs without invoking anti-assignment

clauses or reserving any rights thereunder.  Second, the
defendants routinely sent communications to the plaintiffs
addressing them as Plan beneficiaries.  For example, each of the
provider explanation of benefits ("PEOB") used by the defendants
to communicate benefit determinations to the plaintiffs states:
"You or your authorized representative may appeal or grieve our
determination."  The PEOBs also reference "your policy" when
referring to a Plan, although the PEOBs are addressed to
providers.

The plaintiffs filed their initial complaint on September
17, 2013, asserting four ERISA and five state law claims.  The
plaintiffs asserted these claims with respect to approximately
160 medical procedures.  The case was initially assigned to the
Hon. Thomas P. Grisea.

On August 15, 2014, Judge Grisea partially dismissed the
complaint.  Mbody Minimally Invasive Surgery, P.C. v. Empire
Healthchoice HMO, Inc., No. 13cv6551, 2014 WL 4058321, at *8
(S.D.N.Y. Aug. 15, 2014) (the "August 2014 Opinion").  The
August 2014 Opinion dismissed the plaintiffs' ERISA breach of
fiduciary duty and declaratory judgment claims, claims arising
under Medicare and the Federal Employee Health Benefits plan,
and state law claims for breach of contract, unjust enrichment,
and under N.Y. G.B.L. § 349.  Id. at *4-8.  In relevant part,

Judge Grisea also dismissed ERISA claims arising from Plans that contained anti-assignment provisions, holding

> plaintiffs do not have standing to bring claims under ERISA plans that contain express anti-assignment provisions.  If a health insurance plan unambiguously prohibits assignment, an attempted assignment will be ineffectual.  Here, the anti-assignment provisions are clear. . . . The plan language is unambiguous.  Thus, plaintiffs' alleged assignments are not valid.

Id. at *3 (citation omitted).  The defendants answered the complaint on August 29.[3]

On May 11, 2015, the plaintiffs moved for leave to amend the complaint, which was granted on November 9.[4]  The plaintiffs filed their amended complaint on November 10, asserting four counts against the defendants arising from approximately 470 Claims listed in the amended complaint.[5]  Two counts relate to Claims arising under ERISA Plans: (1) breach of plan provisions for benefits in violation of ERISA § 502(a)(1)(B), 29 U.S.C.

---

[3] The defendants also moved for partial reconsideration of the August 14 Opinion on August 28.  Judge Grisea denied the motion on February 25, 2015.  Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc., No. 13cv6551, 2015 WL 798082, at *3 (S.D.N.Y. Feb. 25, 2015).

[4] The plaintiffs argue that Judge Grisea, in granting leave to amend, already considered the issues raised in the instant motion.  The two page Order granting leave to amend, however, did not do so.

[5] Of the Claims, twenty were asserted in the original complaint and dismissed based on anti-assignment provisions in the August 2014 Opinion.  These Claims are listed in paragraph three of the December 30, 2015 Declaration of Rachel Kramer (the "2015 Kramer Declaration").

§ 1132(a)(1)(B); and (2) failure to provide adequate written notice and reasons for Claim denials under ERISA § 503(1), 29 U.S.C. 1133(1) and 29 C.F.R. § 2560.503-1.  The other two counts relate to Claims arising under non-ERISA plans: (3) breach of the covenant of good faith and fair dealing, and (4) violation of N.Y. Insurance Law § 3224-a.  The plaintiffs seek, among other relief, compensatory damages in excess of $4 million.

On December 30, the defendants filed a motion to partially dismiss the amended complaint.  On January 14, 2016, this case was reassigned to this Court.  The motion became fully submitted on March 22.  The defendants seek to dismiss certain Claims based on the terms of the Plans governing those Claims (the "Governing Plans").[6]  Specifically, defendants move to dismiss approximately 210 Claims for lack of standing under ERISA, as these Claims arise under Plans that contain express anti-assignment provisions.[7]  The defendants also seek dismissal of 30

---

[6] The defendants have submitted 23 documents describing the terms of the Governing Plans with their motion.  Some of these documents are the Governing Plan contracts themselves while others are summary plan descriptions.

[7] One of the submitted Governing Plan documents, the Community Rated Group PPO Plan (the "Community Plan"), provided as Exhibit L of the 2015 Kramer Declaration, is a sample Plan only.  In their reply brief, the defendants withdrew their motion for all Claims listed in the 2015 Kramer Declaration as governed by the Community Plan.  Accordingly, this Opinion does not address Claims listed in the 2015 Kramer Declaration as governed by the Community Plan.

Claims as untimely under contractual limitations periods and eight Claims with unidentified policy numbers.[8]

## DISCUSSION

When deciding a motion to dismiss under Rule 12(b), Fed. R. Civ. P., a court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. Loginovskaya v. Batratchenko, 764 F.3d 266, 269-70 (2d Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation omitted)). A claim has facial plausibility when "the factual content" of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted).

"Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in

---

[8] The defendants also sought to dismiss two claims arising under Medicare and Federal Employee Health Benefit Plans. The plaintiffs have voluntarily excluded these two Claims from the amended complaint. Accordingly, this ground for dismissal is mooted.

evidence, a court adjudicating such a motion may review only a narrow universe of materials." Goel v. Bunge, Ltd., --- F.3d ---, 2016 WL 1696597, at *2 (2d Cir. Apr. 28, 2016).  As such, courts "do not look beyond facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." Id. (citation omitted).  Nonetheless, "in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." Id. at *3.  A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." Id. (citation omitted).

> In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason -- usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim -- was not attached to the complaint.

Id. (citation omitted).

The Governing Plan documents submitted by the defendants firmly fit into the category of documents integral to a complaint.  Courts routinely consider ERISA plan documents and their summary plan descriptions on motions to dismiss.  See, e.g., Faber v. Metro. Life Ins. Co., 648 F.3d 98, 100-01 (2d

Cir. 2011); Neuroaxis Neurosurgical Associates, PC v. Costco Wholesale Co., 919 F. Supp. 2d 345, 352-55 (S.D.N.Y. 2013).  The Governing Plan documents are precisely the kind of "contracts" upon which the plaintiffs' amended complaint stands or falls. Accordingly, they can be considered on a motion to dismiss.

## I.    Standing Under ERISA

Defendant seeks dismissal of approximately 210 Claims arising under ERISA Plans with anti-assignment provisions.[9] Pursuant to ERISA § 502(a)(1)(B), health plan participants and beneficiaries are authorized to bring civil enforcement actions to recover plan benefits.[10]  See Rojas v. Cigna Health & Life Ins. Co., 793 F.3d 253, 256 (2d Cir. 2015).  The terms "participant" and "beneficiary" are defined by statute.  29 U.S.C. § 1002(2)(B)(7)-(8).  Healthcare providers are not beneficiaries or participants under ERISA.  See Rojas, 793 F.3d

---

[9] These Claims are listed in paragraph two of the 2015 Kramer Declaration.  The Claims considered by this Opinion do not include the two Claims listed in paragraph two as arising under the Community Plan.

[10] The standing requirements discussed here also apply to the plaintiffs' ERISA § 503 claim.  As Judge Grisea held in the August 2014 Opinion, while ERISA § 503 does not create a private right of action, a plaintiff may sue for equitable relief under ERISA § 502(a)(3) as a "participant, beneficiary, or fiduciary" to enforce § 503.  29 U.S.C. § 1132(a)(3); see also Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir. 1992); August 2014 Opinion, 2014 WL 4058321, at *4.  The plaintiffs do not allege that they fall under any of these three categories.

at 257-58.  The plaintiffs concede that they are neither
participants nor beneficiaries under the Plans.

While § 502 generally permits only the parties specifically
enumerated in the statute to sue for relief, there is a "narrow
exception" for "healthcare providers to whom a beneficiary has
assigned his claim in exchange for health benefits."  Am.
Psychiatric Ass'n v. Anthem Health Plans, Inc., --- F.3d ---,
2016 WL 2772853, at *7 (2d Cir. May 13, 2016) (citation
omitted).  In order for an assignee to prevail on an ERISA
claim, however, the assignee must establish the existence of a
valid assignment that comports with the terms of the benefits
plan.  Kennedy v. Conn. Gen. Life Ins. Co., 924 F.2d 698, 700
(7th Cir. 1991); see also Spinedex Physical Therapy USA Inc. v.
United Healthcare of Arizona, Inc., 770 F.3d 1282, 1296 (9th
Cir. 2014); Physicians Multispecialty Grp. v. Health Care Plan
of Horton Homes, Inc., 371 F.3d 1291, 1293 (11th Cir. 2004);
City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc., 156 F.3d 223,
228 (1st Cir. 1998) ("City of Hope").

Assuming an ERISA plan does not dictate the form of a valid
assignment or bar assignment altogether, a court may draw upon
federal common law in assessing whether any purported assignment
was effective.  See, e.g., Rojas, 793 F.3d at 258-59; see also
I.V. Servs. Am. Inc. v. Trs. Am. Consulting Eng'rs Council, 136
F.3d 114, 117 n.2 (2d Cir. 1998).  In discerning the content of

federal common law, courts draw inspiration from state law to
the extent that state law is not inconsistent with the federal
policies underlying ERISA.  Critchlow v. First UNUM Life Ins.
Co. Am., 378 F.3d 246, 256 (2d Cir. 2004).  Valid assignments
may take a variety of forms.  Montefiore Med. Ctr. v. Teamsters
Local 272, 642 F.3d 321, 329 n.8 (2d Cir. 2011).  At common law,
an assignment can be made "either orally or by writing" unless a
statute or contract provides otherwise.  Restatement (Second) of
Contracts § 324.  Under New York law "[n]o particular words are
necessary to effect an assignment; it is only required that
there be a perfected transaction between the assignor and
assignee, intended by those parties to vest in the assignee a
present right in the things assigned."  Condren, Walker & Co. v.
Portnoy, 856 N.Y.S.2d 42, 43 (1st Dep't 2008) (citation
omitted).

Where ERISA plan language unambiguously prohibits
assignment, however, an attempted assignment will be
ineffectual.  See, e.g., Spinedex Physical Therapy USA Inc., 770
F.3d at 1296; Physicians Multispecialty Grp., 371 F.3d at 1295;
LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart
Stores, Inc., 298 F.3d 348, 352 (5th Cir. 2002) ("LeTourneau");
City of Hope, 156 F.3d at 229.  Thus, "a healthcare provider who
has attempted to obtain an assignment in contravention of a

plan's terms is not entitled to recover under ERISA."
Neuroaxis, 919 F. Supp. 2d at 352.

In determining whether contract language prohibits
assignment to a healthcare provider, courts apply traditional
principles of contract interpretation.  See LeTourneau, 298 F.3d
at 352; cf. Critchlow, 378 F.3d at 256; City of Hope, 156 F.3d
at 229.  The Second Circuit "interpret[s] ERISA plans in an
ordinary and popular sense as would a person of average
intelligence and experience."  Critchlow, 378 F.3d at 256.
Furthermore, because the Second Circuit applies "rules of
contract law to ERISA plans, a court must not rewrite, under the
guise of interpretation, a term of the contract when the term is
clear and unambiguous."  Burke v. PriceWaterHouseCoopers LLP
Term Disability Plan, 572 F.3d 76, 81 (2d Cir. 2009) (citation
omitted).

**A. Anti-Assignment Provisions of Governing Plans**

Here, the plaintiffs do not have ERISA standing to pursue
Claims governed by Plans with anti-assignment provisions.  The
anti-assignment provisions in the Governing Plans unambiguously
prohibit assignment.  For example, the Empire Healthchoice HMO,
Inc. Plan described above expressly prohibits Enrollees from
"assign[ing] any benefits or monies due under this Contract to
any person, corporation, or other organization" and provides
that any assignment by an Enrollee "will be void."  The other

12

Governing Plans contain similar clear language, providing, for example, that "[o]nly Covered Persons can receive the benefits provided under this Contract for payment" and "any attempt to assign benefits or payments for benefits will be void unless authorized by us in writing."[11]  These provisions expressly and unambiguously bar assignment and, as such, the plaintiffs' alleged assignment of these Claims are invalid.

### B. Estoppel

As described above, the plaintiffs allege that the defendants have waived these anti-assignment provisions by making direct payments to the plaintiffs, routinely sending communications to the plaintiffs addressing them as Plan beneficiaries, and inviting the plaintiffs to initiate administrative appeals of claims decisions.  Principles of estoppel can be applied in the ERISA context in "extraordinary circumstances."  Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 109 (2d Cir. 2008) (citation omitted).  Estoppel in ERISA cases has four elements: (1) a promise, (2) reliance, (3) injury, and (4) injustice if the promise is not enforced.  Id. Prior payments to healthcare providers do not create a "viable estoppel claim," however, where ERISA plans unambiguously prohibit assignments.  Riverview Health Institute LLC v. Med.

---

[11] The anti-assignment language of each relevant Governing Plan is listed in paragraph two of the 2015 Kramer Declaration.

Mutual of Ohio, 601 F.3d 505, 523 (6th Cir. 2010).  The Sixth

Circuit explained the reasoning behind this conclusion as

follows:

> Principles of estoppel cannot be applied to vary
> the terms of unambiguous plan documents; estoppel
> can only be invoked in the context of ambiguous
> plan provisions.  There are at least two reasons
> for this.  First, as we have seen, estoppel
> requires reasonable or justifiable reliance by
> the party asserting the estoppel.  That party's
> reliance can seldom, if ever, be reasonable or
> justifiable if it is inconsistent with the clear
> and unambiguous terms of plan documents available
> to or furnished to the party.  Second, to allow
> estoppel to override the clear terms of plan
> documents would be to enforce something other
> than the plan documents themselves.  That would
> not be consistent with ERISA.

Id. at 521 (citation omitted); see also Neuroaxis, 919 F. Supp.

2d at 355-56.

Here, the plain language of the Governing Plans is clear

and the plaintiffs do not allege any extraordinary circumstances

that warrant the application of estoppel.[12]  Notably, the parties

have already litigated whether direct payments to the plaintiffs

waived the anti-assignment provisions.  Judge Grisea explicitly

held that this argument had no merit, reasoning that "insurance

companies routinely make direct payments to healthcare providers

without waving anti-assignment provisions."  August 2014

---

[12] Accordingly, the plaintiffs' reliance on Biomed
Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc.,  No.
10cv7427, 2011 WL 803097 (S.D.N.Y. Feb. 18, 2011), is
inapposite, as Biomed involved an ambiguous anti-assignment
provision.  Id. at *5.

Opinion, 2014 WL 4058321, at *3; see also Riverview Health Institute LLC, 601 F.3d at 523; Neuroaxis, 919 F. Supp. 2d at 355-56.  Moreover, the plaintiffs have not established that administrative appeals or the communications sent to the defendants constituted any sort of promise that overrode the unambiguous language of the Governing Plans.  Accordingly, the defendants are not estopped from relying on the Governing Plans' anti-assignment provisions.

### C. "Authorized Representatives" Under 29 C.F.R. § 2560.503-1(b)(4)

The plaintiffs also maintain that regardless of the anti-assignment provisions, they are entitled to pursue ERISA claims as their patients' "authorized representatives" under 29 C.F.R. § 2560.503-1(b)(4).  Section 2560.503-1(b)(4) states that claims procedures for a plan will be deemed reasonable only if they "do not preclude an authorized representative for a claimant from acting on behalf of such a claimant in pursuing a benefit claim or appeal of an adverse benefit determination."  The plaintiffs fail to explain how their purported status as "authorized representatives" under this regulation is distinguishable from their theory that they are proper assignees of their patients' Claims.  Indeed, the cases cited by the plaintiffs for their § 2560.503-1 theory of standing, none of which are from this district, all focus on whether the plaintiff providers received

a valid assignment of rights from plan members.  Int'l Air Med.
Servs. v. Triple-S Salud Inc., No 15cv149, 2015 WL 5158832, at
*1 (D. Ariz. Sept. 3, 2015); Parkridge Med. Ctr., Inc. v. CPC
Logistics, Inc. Grp. Benefit Plan, No. 12cv124, 2013 WL 3976621,
at *9-10 (E.D. Tenn. Aug. 2, 2013); Spectrum Health v. Valley
Truck Parts, No. 07cv1091, 2008 WL 2246048, at *4 (W.D. Mich.
May 30, 2008).  Accordingly, the plaintiffs "authorized
representative" theory of standing also fails because of the
unambiguous anti-assignment provisions of the Governing Plans.

### D. Assignment of Causes of Action

The plaintiffs argue that the anti-assignment provisions in
the Governing Plans bar only the assignment of "benefits," not
causes of action.  Language barring the assignment of health
plan benefits has not been read by courts to exclude causes of
action.  See, e.g., August 2014 Opinion, 2014 WL 4058321, at *2-
3; Neuroaxis, 919 F. Supp. 2d at 352-55.  Moreover, this
argument is internally inconsistent as it would allow the
plaintiffs to pursue benefit payments in court, but
contractually bar them from receiving those payments.

## II.  Time-Barred Claims

The defendants also seek to dismiss 30 Claims, newly raised
in the amended complaint, that are barred by contractual

limitations periods.[13]  Each of these Claims involves service dates between July 2011 and March 2014, and are governed by either two or three year limitations periods.  The contractual limitations periods of the applicable Governing Plans are unambiguous, and the filing of these Claims with the amended complaint falls outside of these contractual periods.  These 30 Claims are therefore time-barred.

The plaintiffs assert that these claims relate back to conduct alleged in the original complaint, citing Fed. R. Civ. P. 15(c)(1)(B).  Rule 15(c)(1)(B) provides that an amendment to a pleading "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading."

The 30 new Claims do not arise from the same conduct alleged in the original complaint.  While the plaintiffs were the providers for all Claims at issue in this case, these new Claims involve different Enrollees who sought different health care services on different dates of service.  These Claims therefore arise from different transactions and occurrences that do not relate back to the original complaint.

---

[13] These Claims are listed in paragraph four of the 2015 Kramer Declaration.  The 30 Claims do not include the two Claims listed in paragraph four as arising under the Community Plan.

### III. __Unidentified Claims__

The defendants move to dismiss eight Claims without policy numbers[14] on the ground that the plaintiffs have failed to comply with the notice pleading requirements of Fed. R. Civ. P. 8. Rule 8(a) requires that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought."

The pleading of these eight Claims meets the requirements of Rule 8.  The amended complaint lists the date of service and balance owed for each of these Claims.  Thus, it provides adequate notice of the services rendered by the plaintiffs and the amount the plaintiffs seek to recover.  That the policy numbers are not yet identified does not render these eight Claims implausible.  The parties may address the issue of missing policy numbers during discovery.

### IV. __Consideration of Governing Plan Documents__

The plaintiffs argue that the Court may not properly consider the Governing Plans documents submitted by the defendants to resolve a motion to dismiss.  Specifically, the plaintiffs argue that the 2015 Kramer Declaration does not establish that the submitted Governing Plans documents are

---

[14] These eight unidentified Claims are listed in paragraph seven of the 2015 Kramer Declaration.

enforceable "written instruments," particularly since many of them are summary plan descriptions.[15]

The plaintiffs rely on CIGNA Corps. v. Amara, 563 U.S. 421 (2011), to contend that the Supreme Court held that a summary plan description is not an enforceable written instrument under 29 U.S.C. § 1102(a)(1). CIGNA Corps. involved a claim alleging deliberate misrepresentations of the governing plan in the summary plan description. Id. at 431-32. The Court, declining to enforce the misleading terms of the summary plan descriptions as an equitable remedy, concluded that the summary documents "provide communication with beneficiaries about the plan," but "their statements do not themselves constitute the terms of the plan for purposes of § 502(a)(1)(B)." Id. at 438. Here, the plaintiffs do not argue that the terms of the summary plan descriptions are misleading.[16]

---

[15] The plaintiffs' assertion that the Governing Plan documents may not be authentic is conclusory and an obvious attempt to manufacture a factual dispute. The plaintiffs do not directly challenge the authenticity of these documents, but only speculate that the Court should not trust that they are binding and governing.

[16] The plaintiffs also objected to the defendants' "self-serving selection" of excerpts from the Governing Plan documents. In response, the defendants submitted full copies of the Governing Plan documents with their reply brief. The plaintiffs have not requested an opportunity to submit a sur-reply in order to pursue their assertion that the excerpts chosen by the defendants were misleading.

## CONCLUSION

The defendants' December 30, 2015 motion to dismiss is granted in part.  The defendants' motion to dismiss Claims arising under Governing Plans with anti-assignment provisions and Claims barred by contractual limitations periods is granted. The defendants' motion to dismiss Claims without identified policy numbers is denied.

SO ORDERED:

Dated:    New York, New York
          May 19, 2016


                            _____
                                    DENISE COTE
                            United States District Judge